Motion to dismiss appeals denied, decree modified and as modified affirmed, with costs to all parties payable out of the estate.

---

ADALINA C. RICHARD, as Administratrix, etc., of HENRY A. RICHARD, Deceased, Respondent, *v.* HENRY SANFORD, as President of the ADAMS EXPRESS COMPANY, Appellant.

*Personal injuries — verdict based on conjecture, set aside.*

In an action brought to recover damages for personal injuries alleged to have been caused by the negligent driving of another, if the verdict of the jury can be supported only by conjecture and speculation the judgment rendered thereon must be reversed upon appeal. (PRATT, J., dissenting.)

APPEAL by the defendant, Henry Sanford, as president of the Adams Express Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 4th day of December, 1893, upon the verdict of a jury rendered after a trial at the Kings County Circuit, and also from an order entered in said clerk's office on the 18th day of November, 1893, denying the defendant's motion for a new trial made upon the minutes.

*William D. Guthrie* and *Henry S. Wardner,* for the appellant.

*D. Nemirs,* for the respondent.

SECOND DEPARTMENT, MAY TERM, 1894.        [Vol. 78.

BROWN, P. J.:

The judgment in this action must be reversed upon the ground that the evidence does not permit the inference that the driver of the wagon was negligent, or that injuries received by the deceased were caused by the defendant.

The accident happened between five and six o'clock on November twenty-first near the corner of Pearl street and Maiden Lane in the city of New York.

The express wagon was going north on Pearl street, and the deceased was crossing the street just north of the crossing on the north side of Maiden Lane.

There was no eye witness of the accident sworn upon the trial except the driver of the wagon. He testified as follows: "I was driving along Pearl street and I see this man just across the crossing in a diagonal way. He attempted to cross the street and I shouted at him, and my helper shouted at him, and I hauled up my horse all I possibly could, and he staggered and fell. My horse I just held like that, steady. He neither tramped on him nor did the wagon or shaft hit him. My horse did not touch him in any way. The shafts did not strike him in any way. The wheels did not touch him in any way. When the man fell he fell probably from two to three feet ahead of the horse, as near as I can guess. I hauled my horse up, handed the lines to my man, and got down; the pair of us got down and lifted him up. The gentleman started to run across about ten feet ahead of the crossing. It was north of the crossing, up towards Fulton street. The moment I saw the man attempt to cross I shouted to him. I held up my horse for all I was worth and he did stand.

"I was driving through Pearl street about ten feet, as near as I can guess, from Maiden Lane. I was going up-town towards Fulton street. That is where I was crossing Maiden Lane. I was probably about ten feet, as near as I can guess, over the up-town crosswalk. Mr. Richard came from the up-town, the Broadway, side, across down-town towards the ferry. I think that is what he was making for. I see him start from the sidewalk on a run, and at the time that I saw him fall probably he was six or seven feet across the street, may be more; I couldn't just say."

The only witness called by the plaintiff to prove the accident was

Henry Baker. He testified as follows: " On the evening or in the afternoon of November, 1891, I was on the southeast corner of Maiden Lane and Pearl street, New York city. It was somewhere around between five and half-past five o'clock in the evening; I was standing on the corner waiting for a friend to close his store, previous to going to Brooklyn; and while I was waiting I heard a wagon passing the corner at a very fast rate, and I just turned around to see what it was — what the noise was about, and didn't pay no more attention to it until it had crossed Maiden Lane, and then I heard a sudden stop, and I saw two or three men running towards the wagon, and I knew it was an accident, and I saw some one lying in front of the horse as I run over. We helped the man to his feet and carried him over to the sidewalk. At the time it stopped this wagon was about five feet from the crossing of Pearl street and Maiden Lane. When I looked around and the wagon had stopped, Mr. Richard was in front of the horse, lying down. The horse was in Pearl street going up towards Fulton street. When they stopped they were at the up-town crossing towards Fulton street, about five feet over it. I ran to the place where Mr. Richard was. I got there as soon as some of the other people got there. At the time that he was lying there in front of the horse he spoke. I heard what he said. The driver was down on the street then; he got off the wagon.

" I saw no marks on him. He was within two feet of the horse when I got there.

" I know of nothing in the way to obstruct the view of the driver of this wagon to prevent his seeing Mr. Richard before he came on to him; there was a truck going up Maiden Lane from Pearl street about three or four minutes previous to the express wagon coming down or going up. It was out of the way before the express wagon got to the down-town side of Maiden Lane. The truck that I saw turned from Pearl street into Maiden Lane. It was going south, and turned the corner towards Broadway. Right after that truck passed this express wagon came down. I guess about the same time the truck went into Maiden Lane the express wagon came down."

It will thus be seen that there was nothing to obstruct the view of the driver or the deceased. The deceased could have seen the wagon had he looked before he left the sidewalk. The driver saw

the deceased as soon as he stepped into the street and stopped his horse within two feet of him as he fell.

There is absolutely no evidence that the deceased was knocked down by the horse or the wagon, and without some proof of that fact the injury received from the fall cannot be attributed to the defendant. If it was received from the fall in the street defendant is not liable, and it is entirely consistent with all the facts proven that it was so received, and no other cause for it appears.

There is nothing to support the conclusion of the jury that the injury was caused by defendant, except guess and speculation.

I think, also, that the evidence shows deceased to have been guilty of contributory negligence. He was not at the street crossing but above it, and could have seen the wagon if he had looked to the south.

Reference is made to an answer made by witness Baker to a question put to him on rebuttal. The question and answer are as follows: " Q. Did Mr. Richard say, in the presence and hearing of Mr. Macauley at that time, that the horse came on him so quickly that he couldn't get out of the way? [Objected to as incompetent and as leading; objection overruled; exception taken.]

" The Court.— This is admitted solely as impeaching the witness.

" The Witness.— Yes, sir."

This evidence does not aid the plaintiff's case. It does not show that the horse or wagon struck the deceased or that the driver was negligent. It is entirely consistent with the fact that deceased slipped on the street in his effort to avoid the wagon, which he had not observed when he started to cross.

But the effect of the evidence was limited by the trial court, and we can give it no greater weight than it was permitted to have on the trial.

The judgment should be reversed and there should be a new trial.

Dykman, J., concurred.

Pratt, J. (dissenting):

This is an appeal from a judgment in favor of the plaintiff entered upon a verdict, also from an order denying a motion for a new trial upon the minutes, etc.

The action was for damages in causing the death of plaintiff's intestate. As to the question of freedom from negligence on the part of the deceased, the evidence was sufficient to warrant submission of this question to the jury.

The express wagon was going at quite a fast rate of speed; the time was between sundown and dark, which, considered in connection with the conduct of the driver of the express wagon, and all the circumstances of the case, presented such a case as to justify a jury in inferring that the deceased omitted no precaution which a prudent man should have taken to avoid the accident.

While no presumption arises from the mere fact of injury that the injured party is free from fault, yet such fact may be established by inferences properly drawn from surrounding facts and circumstances. (*Galvin* v. *Meyer, etc.,* 112 N. Y. 223.)

The main difficulty in the case relates to the question whether death was caused by the negligence of the defendant. The evidence established the fact that death was caused by consumption accelerated by the injury.

This question is raised by an exception to the following expression in the charge of the judge, which was duly objected to, to wit: "I charge you that if the defendant materially hastened the death of the deceased, that is a cause of death within the meaning of this statute, which enables the plaintiff to maintain this action."

In effect, if the deceased's life was materially shortened by the negligence of the defendant the action could be maintained.

At common law, if a person was killed by another, although about to die, yet the slayer was held responsible, and there seems no good reason why the same rule should not apply to the statute upon which this is brought.

If the deceased's life was materially shortened by the act of the defendant, then death at the time it took place must be regarded as due to that cause.

It is true the award of damages is a matter more or less of speculation, as the jury had to find how long the deceased would have probably lived in order to estimate the amount of pecuniary loss sustained by the next of kin, but if the ruling as made by the judge was correct, there was no other thing to do than to furnish the best evidence available and let the jury determine the result.

The plaintiff proved a reasonable basis for the conclusion that death would not have taken place as soon as it did had it not been for the injury received by the intestate. It is true the intestate had consumption at the time of the accident, but no other cause of death intervened afterwards to cause death, and it is in no wise certain that he might not have recovered from that disease if it had not been for the injury received.

With some hesitation I think the ruling of the judge upon this question was sound.

The question of defendant's negligence was properly submitted to the jury, and the verdict is supported by the evidence. The evidence was conflicting and the verdict must be taken as conclusive.

The main question in this case, as to cause of death, has not, to my knowledge, been passed upon in this State, and no case has been referred to by either side that has directly passed upon this question.

The judgment should be affirmed, with costs.

Judgment reversed and new trial granted, costs to abide event.